ARMSTRONG BROTHERS, Plaintiffs and Appellees, *v.* JOHN M. TURNER, Defendant and Appellant.

No. 3000. Argued December 20, 1923.—Decided April 21, 1925.

1. APPEAL—EVIDENCE.—When the evidence examined on appeal shows clearly that the trial court did not err in weighing it and that if there was any error it was not prejudicial or so manifest as to require a reversal, the judgment will be affirmed.

2. ID.—ID.—The trial judge does not err in ignoring certain evidence that would not affect the result.

3. ID.—QUESTIONS OF LAW.—The Supreme Court will not consider questions of law which, besides not having been fully developed and discussed in the brief, do not affect the main issue.

Second District Court of San Juan, M. Rodríguez Serra, J. Judgment for the plaintiffs in an action on a contract. *Affirmed.*

*Daniel F. Kelley* for the appellant. *Jacinto Texidor* for the appellees.

MR. JUSTICE HUTCHISON delivered the opinion of the court.

Defendant appeals from a judgment for the rescission of a sale together with damages and costs, and says that—

"1.—The District Court erred in finding that the sale of flour

to Armstrong Brothers was made by John M. Turner on his own account and not as agent of the Blish Milling Company.

"2.—The District Court erred in finding that the testimony of Rafael Pujals Carlo was the only evidence introduced to show that Armstrong Bros. knew that John M. Turner acted as agent of the Blish Milling Company.

"3.—The District Court erred in not finding that John M. Turner, by his communication of June 8, 1920, notified Armstrong Brothers that he made the sale as agent of the Blish Milling Company.

"4.—The District Court erred in not finding from the evidence as a whole that John M. Turner acted as the agent of the Blish Milling Company.

"5.—The District Court erred in not finding that Aurelio Christian acted as factor, agent, employee or representative of Armstrong Brothers with sufficient authority to make the purchase.

"6.—The District Court erred in not finding that Aurelio Christian was an expert whose calling enabled him easily to distinguish the apparent and hidden defects in corn flour.

"7.—The District Court erred in not finding that the evidence as a whole showed that Aurelio Christian had an opportunity to examine the flour thoroughly and that he examined it.

"8.—The District Court erred in not finding that the purchase made by Aurelio Christian as representative of Armstrong Brothers was a sight sale.

"9.—The District Court erred in not finding that the flour sent to Armstrong was the same that Aurelio Christian examined as representative of the purchaser.

"10.—The District Court erred in finding that John M. Turner sold the flour to Armstrong Brothers as a high-grade flour.

"11.—The District Court erred in finding that John M. Turner sold the sacks of flour as containing 200 net pounds and that they were short in weight.

"12.—The District Court erred in finding that the flour sold contained large grumes, numerous worms and weevils.

"13.—The District Court erred in finding that the letter written by John M. Turner to Armstrong Brothers on June 8, 1920, declared that the flour had left his warehouse in good condition, since Turner was referring to the condition of the sacks and not to that of the flour.

"14.—The District Court erred in allowing the witnesses Matías Enseñat, Pedro Juan Bonnin and Rafael Collazo Torres to testify as experts.

"15.—The District Court erred in including in the adjudged damages the alleged amount that Armstrong Brothers claimed they failed to earn by the sale of the flour.

"16.—The District Court erred in not finding that the law and the facts were in favor of the defendant and in not rendering judgment in his favor.

[1] What the court found was that Turner did not make it sufficiently clear to Armstrong Brothers that he was acting as the agent for the milling company; and the record does not disclose any such manifest error in this regard as to require a reversal.

[2] The second assignment is technically correct; but the statement filed by the trial judge, taken as a whole, makes it quite clear that the testimony overlooked or ignored by him would not have affected the result, even though the omission to mention or discuss the same had been called to his attention.

The court below correctly quotes the letter of June 8th and points out that, even in that communication, Turner does not say in so many words that he had acted as agent. That circumstance is mentioned in connection with the fact that the previous statement furnished Armstrong Brothers by Turner's employees, and the bill of lading, contained no intimation of agency. Inasmuch as the letter was written in reply to a telegram and letter from Armstrong Brothers refusing to accept the flour, and demanding reimbursement of the purchase price, the error, if any, was harmless. Whatever information was contained therein, by inference or otherwise, as to the relation of principal and agent, came too late; and an affirmative finding in favor of defendant on this point would not have helped his case.

For the same or similar reasons the fourth assignment does not demand serious consideration.

The fifth, sixth, seventh, ninth and tenth assignments depend upon the eighth; and after a careful consideration

of all the evidence we are unable to say that the trial judge was clearly wrong in his weighing of the testimony in connection with the documentary evidence.

An extended discussion of all the evidence, which as a whole leaves much to be desired, would serve no very useful purpose. Perhaps it would have been easier to affirm a judgment for defendant; and it is difficult to avoid a suspicion that if defendant had lived until the date of the trial the result below might have been different.

But, be this as it may, the shortage in weight seems to be almost as unquestionable as it was insignificant when compared with the quantity actually delivered; and there is no adequate basis in the record to support the claim that the reduction in price was intended to cover any shortage in weight as well as any deterioration in quality.

Thus an affirmance becomes inevitable, regardless of whatever merit may be found in the remaining assignments, with a possible exception as to the fifteenth.

[3] The theory of the assignment last mentioned apparently does not challenge the loss of prospective profits as a proper measure of damages in the event of a recovery, but denies the right to recovery of damages by reason of hidden defects inherent in the article sold and unknown to the vendor. The argument, if we understand it, seems to concede by inference or implication, or at least does not in terms deny, that defendant would be liable for damages arising out of a rescission of the contract for shortage in weight, if the contention of appellant that such possible shortage was covered by the reduction in price should prove untenable.

In any event, the argument for appellant is by no means exhaustive upon this point, and we have no time for independent investigation of matters not fully developed and discussed in the brief. We mention this, not in a spirit of criticism, but merely by way of limiting the scope of our

decision herein as a precedent and in order to avoid possible misunderstanding in this regard. The amount of damages arising from the loss of anticipated profits, in the instant case, is obviously not so large as to compensate an attorney for any great expenditure of time and labor in the study and elaboration of more or less doubtful and complicated questions of law not affecting the main issue.

The judgment appealed from must be affirmed.